UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**RALPH COLLINS,**

      **Petitioner,**

v.                                                  Criminal Action No. 2:04cr4
                                                   Civil Action No. 2:07cv344

**UNITED STATES OF AMERICA,**

      **Respondent.**

## OPINION AND ORDER

Currently before the court is Ralph Collins's petition to vacate, set aside or correct a sentence previously imposed, filed pursuant to Title 28, United States Code, Section 2255. The petition is timely within the requirements of the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 (1996). The petitioner argues that he received ineffective assistance of counsel, and that he is actually innocent of the offenses of which he was found guilty. Because the record conclusively demonstrates that the petitioner is not entitled to relief, the court declines to hold an evidentiary hearing. See R. Governing § 2255 Proceedings in U.S. Dist. Cts. 8(a). For the reasons fully set forth below, Collins's petition is **DENIED.**

I. Factual Background

The petitioner was named in a fifty-count superseding indictment returned by a federal grand jury on March 8, 2004, as a result of his participation with a fraudulent charity, the Youth at Risk Foundation (hereinafter "YARF"); a business, Just Sports Publications (hereinafter "JSP"); and a publication, the Senior Shopping Guide (hereinafter "SSG"). The petitioner was named in eighteen counts of the superseding indictment: Count One, conspiracy to commit mail

and wire fraud, in violation of Title 18, United States Code, Section 1349; Counts Two through Fifteen, mail fraud, in violation of Title 18, United States Code, Section 1341; Counts Twenty-one through Twenty-Nine, wire fraud, in violation of Title 18, United States Code, Section 1343; Count Thirty-Five, conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h); and Count Thirty-Six, money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(I) and (b)(1)(B)(I).

The petitioner pleaded not guilty to the charges against him, and was tried along with three co-defendants, John Maurice Henoud, Sharon Kay Moore, and Ronald Clark Morrison.[1] The trial began on May 5, 2004, and on May 26, 2004, the jury returned a guilty verdict against the petitioner on all eighteen counts of the superseding indictment against him. On April 13, 2005, this court sentenced the petitioner to a term of imprisonment of 108 months. The petitioner, along with co-defendants Henoud, Moore, and Morrison, filed a notice of appeal. On April 20, 2007, the Fourth Circuit affirmed the convictions and sentences of the petitioner and his co-defendants by unpublished per curiam opinion. See United States v. Henoud, 228 Fed. Appx. 308 (4th Cir. April 20, 2007) (per curiam) (unpublished).

---

[1] Prior to trial, and in an apparent attempt to secure Henoud as a witness in favor of the petitioner, defense counsel Brett D. Lucas moved for severance of the petitioner's trial, claiming potential prejudice because of the petitioner's involvement in only some aspects of the conspiracy and the possibility that certain statements admissible against his co-defendants would be inadmissible against the petitioner in a joint trial. On April 5, 2004, the court conducted a hearing on the motion for severance, as well as other pre-trial motions, at which time Mr. Lucas represented to the court that, were the petitioner's trial severed, he would be able to call Henoud as a witness without any Fifth Amendment obstacles to his testimony. Mr. Lucas also indicated that he had received a letter from Henoud outlining certain items which he claimed would be beneficial to the petitioner. Mr. Lucas did not, however, make this letter part of the record or specify how Henoud's testimony would be beneficial to the petitioner. The court denied the motion to sever.

II.  Procedural History

On July 23, 2007, the petitioner filed the instant motion to vacate, set aside, or alter his sentence pursuant to 28 U.S.C. § 2255.  He also submitted a supplemental memorandum in support of his petition, and included affidavits from himself and an individual named Edward Barksdale.  In his petition, he alleges that he received ineffective assistance of counsel when his attorney, Brett Lucas, failed to call John Henoud as a witness after having promised the petitioner that he would call Henoud, did not submit to the court an allegedly exculpatory letter from Henoud, and failed to renew the petitioner's motion for severance at the close of the trial.  The petitioner also claims that he is actually innocent of the crimes of which he was convicted.

On July 27, 2007, this court ordered the United States to respond to the petition.  On September 25, 2007, the government filed a response brief, wherein it urged the court to deny the petitioner's request for relief.  The petitioner then filed a reply brief on October 18, 2007, urging the court to grant him the requested relief.  The reply brief included an affidavit from an individual named Hazel C. Moore.  As a separate filing, on September 4, 2007, the petitioner filed a "Motion to Expand Record," pursuant to Rule 7 of the Rules Governing Section 2255 Proceedings, and attached to the motion the allegedly exculpatory letter to Mr. Lucas from Henoud.  The matter is therefore ripe for consideration.

III.  Standard of Review

A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the United States Constitution or laws, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral

attack. 28 U.S.C. § 2255. An evidentiary hearing is not required in this case because the case file, along with the court's recollection of the case, are adequate to dispose of the matter. See R. Governing § 2255 Proceedings in U.S. Dist. Cts 8(a); Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

A collateral attack under § 2255 is far more limited than an appeal. A petitioner is entitled to relief under § 2255 only in the extraordinary event that the alleged error represents "'a fundamental defect which inherently results in a complete miscarriage of justice.'" Davis v. United States, 417 U.S. 333, 346 (1974) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). A petitioner bears the burden of proving his grounds for collateral review by a preponderance of the evidence. Jacobs v. United States, 350 F.3d 571, 574 (4th Cir. 1965). Although the doctrine of procedural default bars the consideration of a claim that was not raised at the appropriate time during the original proceedings or on appeal, a claim of ineffective assistance of counsel may, however, be properly brought on a § 2255 petition. United States v. DeFusco, 949 F.2d 114, 120-21 (4th Cir. 1991).

The Sixth Amendment provides, in relevant part, that: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The Sixth Amendment right to counsel includes the right to the effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). The Supreme Court's standard for assessing ineffective assistance of counsel claims is "highly deferential." Id. See Kimmelman v. Morrison, 477 U.S. 365, 382 (1986) (discussing the Strickland standards). There are two prongs to the Strickland test: performance and prejudice. To establish a claim for ineffective assistance of counsel, petitioner must prove both: (1) that his attorney's

conduct fell below an objective standard of reasonableness; and (2) that the attorney's deficient performance caused him prejudice. Strickland, 466 U.S. at 687-91.

Actual prejudice is demonstrated by showing "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. Under Strickland, "there exists a strong presumption that counsel's conduct was within a wide range of reasonably professional conduct, and courts must be highly deferential in scrutinizing counsel's performance." Kratsas v. United States, 102 F. Supp. 2d 320, 322 (D. Md. 2000) (citing Strickland, 466 U.S. at 688-89). Most importantly, the burden of proof lies with the petitioner. United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). A petitioner's conclusory statements will not suffice to prove that there is a reasonable probability that the outcome of his trial would have been different in the absence of his counsel's alleged errors.

IV. Discussion

A. Ineffective Assistance

The petitioner alleges that Mr. Lucas provided him with ineffective assistance in three specific areas: failing to call Henoud as a witness at trial; failing to make the letter written by Henoud part of the record to support his motion for severance; and failing to renew his motion for severance at the close of the government's case-in-chief. The petitioner claims that Mr. Lucas promised him that he would call Henoud as a witness in defense of the petitioner, and that, on the basis of this promise, the petitioner decided to reject a plea agreement offered by the government and instead proceed to trial. The petitioner alleges that, had Mr. Lucas been forthcoming about not calling Henoud as a witness, he would have agreed to plead guilty and

5

receive a sentence of two-and-a-half years,[2] which he claims Mr. Lucas conveyed to him as having been offered by the government. The government, while acknowledging that it engaged in plea negotiations, has denied that it offered to recommend or agree to a specific term of imprisonment with the petitioner. See Affidavit of Joseph DePadilla, Exhibit B to Response Brief, at ¶ 4. The government has also submitted a copy of the proposed plea agreement that it offered to the petitioner. Proposed Plea Agreement, Exhibit C to Response Brief.

At the heart of the petitioner's first allegation of ineffective assistance is his contention that Mr. Lucas told him that he would be calling Henoud as a witness on his behalf. The petitioner claims that, had Mr. Lucas called Henoud during the trial, Henoud would have provided testimony exonerating the petitioner. As evidence of Henoud's purported testimony, the petitioner presents Henoud's letter, which the petitioner claims demonstrates that he is actually innocent of at least some of the offenses of conviction. However, as the government responds, an attempt to call Henoud as a witness in favor of the petitioner, during the trial in which Henoud himself was a defendant, would have been improper in light of the Fifth Amendment, which prevents a defendant from being forced to offer self-incriminating testimony. See United States v. Roberts, 503 F.2d 598, 600 (9th Cir. 1974) (holding that a co-defendant's privilege against self-incrimination trumps even the Sixth Amendment right to compulsory process).

However, it appears that, unlike the co-defendant in Roberts, Henoud did not actually

---

[2]The court notes that, although not completely inconsistent, the petitioner's claim that he would have pleaded guilty had he known that Henoud would not testify on his behalf is difficult to reconcile with his contention that he is actually innocent of the offenses of which he was convicted.

6

assert his Fifth Amendment privilege against self-incrimination, because he was not called by petitioner's counsel as a witness. The petitioner thus argues that there is nothing in the record to demonstrate Henoud's unwillingness to testify on behalf of the petitioner, and therefore that it was ineffective assistance for Mr. Lucas not to call Henoud as a witness. However, it is the petitioner who bears the burden of proof in a § 2255 proceeding, and he has produced no evidence to demonstrate that, had he been called as a witness, Henoud would have relinquished his privilege against self-incrimination and testified that the petitioner was not involved in the YARF/JSP fraud scheme.[3] Although the petitioner swears in his affidavit that Mr. Lucas told him that he was going to call Henoud as a witness, he does not claim that he knew that Henoud would not invoke his Fifth Amendment privilege against self-incrimination.

The only evidence that the petitioner has introduced in support of his claim that Henoud would have exonerated him had he been called as a witness is the letter that Henoud sent to the petitioner's trial counsel, Mr. Lucas. Contrary to the petitioner's claims, the letter does not dispute the specific testimony of the other witnesses who testified against the petitioner at trial. Instead, Henoud merely indicates that the petitioner was a contractor who would occasionally do work for JSP, and that the petitioner would also occasionally cash checks at Bunny's, a pawn shop located in Suffolk, Virginia, some distance away from the YARF/JSP offices in Virginia

---

[3]The court notes that, by testifying, Henoud would have opened himself up to questions regarding his own participation with the YARF/JSP fraud, a situation that he undoubtedly might have preferred to avoid. As noted by Mr. Lucas in his affidavit, his consultation with Henoud's counsel in the course of preparing for trial resulted in him being informed that Henoud would not testify at trial. Affidavit of Brett D. Lucas, Exhibit A to Response Brief, at ¶¶ 7-8.

Beach, Virginia.[4] Indeed, as the government suggests, Henoud's testimony might well have been damaging to the petitioner–who continues to assert actual innocence–in that it would have linked him as having worked for the fraudulent charity YARF and also having engaged in a practice common to money-launderers. Accordingly, the petitioner cannot overcome the "strong presumption that counsel's performance f[ell] within the 'wide range of [reasonable] professional assistance.'" Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).

Further, even if the petitioner could meet the prejudice prong of Strickland, he is unable to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different." Strickland, 466 U.S. at 694. Although the petitioner claims that, had he known that his counsel was not going to call Henoud as a witness in his defense, he would have accepted a plea agreement calling for a sentence of two-and-a-half years, the government has submitted affidavits from the prosecuting Assistant United States Attorney, Mr. Joseph DePadilla, and from Mr. Lucas, attesting to the fact that the defendant never indicated he was interested in a plea agreement.[5] See Affidavit of Brett D. Lucas, Exhibit A to Response

---

[4]In fact, the evidence at trial indicated that Henoud himself would often take checks to Bunny's in order to be cashed, despite the fact that the checks were often made payable to schools or school districts.

[5]In response, the petitioner has submitted an affidavit from an individual named Hazel C. Moore, in which she attests that Mr. Lucas told the petitioner that if he pled guilty, he would receive a sentence of 2.5 years. See Affidavit of Hazel C. Moore, Exhibit A to Reply Brief, at ¶ 5. However, it is unclear who Hazel C. Moore is and how she came to hear Mr. Lucas make this statement to the petitioner. Further, the affiant fails to indicate whether the petitioner showed any interest in the alleged plea offer. If believed, the affidavit only proves that such an offer was made by the government. The petitioner has provided no evidence beyond his own bald assertion that he would have accepted such an offer had Mr. Lucas informed him that Henoud would not be called as a witness.

Brief, at ¶ 5; Affidavit of Joseph E. DePadilla, Exhibit B to Response Brief, at ¶¶ 4-5. In addition, the government has provided a copy of the plea agreement that it claims was offered to the petitioner, which details no specific recommendation as to a term of imprisonment, but rather simply sets forth the maximum imprisonment terms of thirty years for Count One and twenty years for Count Twenty-One. See Proposed Plea Agreement, Exhibit C to Response Brief, at ¶ 1.

Even more damaging to the petitioner's claim is the fact that the court would have had to make an independent evaluation of any plea agreement entered into between the petitioner and the government, and that even were the parties to agree on a fixed sentence, the court would still have to accept the agreement in order for the court to be bound by it at sentencing. See Fed. R. Crim. P. 11(c)(3)(A) (noting that, to the extent the plea agreement is one that agrees to a specific sentence, "the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report"). As Mr. DePadilla indicates in his affidavit, a fixed sentence recommendation in a plea agreement is a tool used by the United States Attorney's Office only on a limited basis, and only then with the approval of supervisory attorneys. Affidavit of Joseph E. DePadilla, Exhibit B to Response Brief, at ¶ 5. Because the petitioner cannot demonstrate–and in fact has not even alleged–that the court would have accepted a plea agreement binding it to impose a sentence of two-and-a-half years, he cannot demonstrate the type of prejudice that is required under Strickland.[6] Accordingly, the petitioner's claim of ineffective assistance of counsel with regard to the failure to call Henoud as a witness must be

---

[6]In hindsight, the petitioner undoubtedly would prefer a sentence of imprisonment of two-and-a-half years to his actual term of imprisonment of nine years. Yet he cannot demonstrate that such a sentence would actually have been imposed had he pleaded guilty.

9

denied.

With respect to the petitioner's second allegation of ineffective assistance, that Mr. Lucas failed to make Henoud's letter part of the record in support of the motion to sever, it is clear that the petitioner can again meet neither prong of the Strickland standard.  While the petitioner claims that, had Mr. Lucas offered the letter in support of severance, the court would have severed the trial, he offers no evidence to demonstrate that this, in fact, would have happened. Rather, as the government argues, Henoud's letter might have undermined the petitioner's case for severance, because it discloses no exculpatory information about the petitioner, and in fact might have further inculpated him by demonstrating his involvement with JSP and his actions in cashing checks at Bunny's pawn shop.[7]  As the Fourth Circuit has held, a party seeking severance on the basis of a co-defendant's testimony must establish both that the co-defendant would indeed waive his rights and testify at the severed trial and that the testimony would be exculpatory.  United States v. Reavis, 48 F.3d 763, 767-68 (4th Cir. 1995).  Because the Henoud letter fails to establish either of these, and may in fact undermine the argument that Henoud's testimony would be exculpatory, the petitioner has not demonstrated that Mr. Lucas's actions in not offering the letter into evidence fell below an objective standard of reasonableness.

Further, even were the petitioner able to meet the performance prong of Strickland, he cannot demonstrate that, but for the result of his counsel's error, the result of the trial would have been any different.  Rather, the petitioner relies, as he must, on his unfounded assertion that, had

---

[7]As Mr. Lucas indicates in his affidavit, "Henoud did write a letter addressed to me, but there was a risk of introducing it as it seemed to tie Collins to Henoud, and I made a tactical decision not to introduce this letter during the hearing on the Motion for Severance."  Affidavit of Brett D. Lucas, Exhibit B to Response Brief, at ¶ 10.

the letter been admitted, the court would have severed the trial, Henoud would have testified on his behalf, and he would have either pleaded guilty or been exonerated. However, as addressed supra, the petitioner lacks support for his claim that Henoud would have testified in his favor, or testified at all, even had the trial been severed. Indeed, the petitioner himself appears to acknowledge this reality, noting that "[t]rial [c]ounsel's assertion at the motions hearing that he could have compelled Henoud to testify at a separate trial upon conclusion of Henoud's trial is incorrect, for Henoud's Fifth Amendment rights as to these offenses continue through his appeal." Supplemental Brief, at 8. Accordingly, the petitioner cannot establish actual prejudice from Mr. Lucas's failure to offer Henoud's letter into evidence, and therefore, his claim of ineffective assistance of counsel must be denied.

The petitioner's final allegation of ineffective assistance is that his attorney was ineffective in failing to renew his motion for severance at the close of the government's evidence at trial. However, the petitioner acknowledges that the Fourth Circuit has yet to adopt a rule that requires a defendant to renew a motion for severance in order to preserve the issue for appeal. To hold, as the petitioner urges, that it would be reasonable for Mr. Lucas to have renewed the motion on the chance that, in the future, the law in this circuit might be changed, would be to turn the concept of reasonableness on its head. Indeed, the petitioner did appeal this court's denial of his motion for severance to the Fourth Circuit, which found this court's ruling proper, applying the same standard that it would have applied had Mr. Lucas renewed the motion at the close of the government's evidence. United States v. Henoud, 228 Fed. Appx. 308, 312-13 (4th Cir. April 20, 2007) (per curiam) (unpublished). Accordingly, even were the petitioner able to establish that the performance prong of Strickland was met, he is unable to demonstrate any

11

prejudice that resulted therefrom. Thus, this claim of ineffective assistance must also be denied.

B. Actual Innocence

The petitioner also requests relief on the grounds that he is actually innocent of the offenses of conviction. At the outset, the court notes that it is unsettled whether a petitioner filing a § 2255 petition may raise actual innocence as a free-standing claim, or whether actual innocence is merely a gateway that permits a court to disregard a petitioner's procedural default. See Hazel v. United States, 303 F.Supp.2d 753, 760 (E.D. Va. 2004) (noting that Fourth Circuit law on the issue is unsettled). However, even assuming that the claim is properly brought by itself, "the threshold showing for such an assumed right would necessarily be extraordinarily high." Herrera v. Collins, 506 U.S. 390, 401 (1993). In Hazel, this court adopted the standard requiring that "'[no] rational trier of fact could [find] guilt beyond a reasonable doubt,' had it been given access to the newly discovered evidence." Hazel, 303 F.Supp.2d at 761 (quoting Herrera, 506 U.S. at 401-402 (White, J., concurring)).

In the instant case, the petitioner provides an affidavit from an individual named Edward Barksdale, in which Mr. Barksdale attests to being familiar with the petitioner's case and being incarcerated with Henoud at some point prior to the trial. Barksdale claims that Henoud told him that the petitioner had no involvement with the criminal activity in this case. Affidavit of Edward Barksdale, Exhibit A to Supplemental Brief, at ¶¶ 3-6. Although the petitioner claims that the Barksdale affidavit is evidence of his innocence, and that Barksdale would have been willing to testify to these matters but was unknown to the petitioner at the time of the trial, it is clear that Barksdale's testimony about what Henoud told him would have been hearsay within the meaning of Federal Rule of Evidence 801(c), and therefore would not have been admissible

at trial if offered for its truth. See Fed. R. Evid. 802. Although the statements might have been admissible for impeachment of Henoud, Henoud did not testify at trial, and the court is unwilling to speculate as to whether Henoud might testify in some future proceeding.

Further, the Barksdale affidavit contains some suspicious characteristics that cause the court to question its veracity. Specifically, although the affidavit is generally typewritten with signatures filled in by hand, paragraph four includes two blank spaces, in which someone has written "Portsmouth City Jail" and "2004," referring to the place and time, respectively, of the affiant's meeting with Henoud. As the government rightly observes, this "fill-in-the-blank" aspect raises serious doubts as to the credibility of Barksdale, because it suggests that the original drafter of the affidavit was unsure as to the time and place of the purported meeting between Barksdale and Henoud. If Barksdale himself did not recall the time and place, it would suggest that his other recollections might also not be the product of his own memory. And considering the affidavit in light of the remainder of the evidence adduced at trial, which consisted of witness testimony and documentary evidence provided by the petitioner, it would appear that the petitioner would still be unable to establish that no rational jury would have convicted him had it considered Barksdale's claims. See also Hazel, 303 F.Supp.2d at 762-63 (rejecting a claim of actual innocence in the face of a far more detailed affidavit). Thus, the petitioner's claim of actual innocence must also be denied.

V. Conclusion

For the foregoing reasons, the petition is **DENIED** and **DISMISSED**. Finding no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, nor a debatable procedural issue, a certificate of appealability is **DENIED**. See

Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

The court advises the petitioner that he may appeal from this denial of a certificate of appealability by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510 within sixty (60) days from the date of this Order.

The Clerk is **REQUESTED** to mail a copy of this Order to the petitioner and to the United States Attorney's Office in Norfolk, Virginia.

**IT IS SO ORDERED.**

/s/
Jerome B. Friedman
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February 1, 2008